UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 14-30089-RAL |
| Plaintiff, | |
| | SENTENCING MEMORANDUM |
| vs. | |
| CHRISTOPHER R. JANSEN, | |
| Defendant. | |

---

Defendant Christopher R. Jansen is scheduled to be sentenced on Monday, March 21, 2016, at 1:00 pm. Doc. 63. On November 17, 2015, he pled guilty to Count I (Sexual Exploitation of a Child) and Count III (Distribution of Material Involving the Sexual Exploitation of a Minor) of a Superseding Indictment. PSR ¶ 4. Count I carries a mandatory minimum of 15 years and up to 30 years in prison, Count III carries a mandatory minimum of 5 years and up to 20 years in prison, and the statutory maximum in this case is 50 years. PSR ¶ 89, 90.

Despite appropriately receiving credit for timely acceptance of responsibility, as contemplated by paragraph E and F of the plea agreement, Defendant's guideline range in this case is high based upon his offense conduct and the facts of this case. On March 1, 2016, a revised Presentence Investigation Report was issued. Doc. 67. In that report, the adjusted offense level for Count III was 47, and the total offense level was 48 (capped at 43). PSR ¶ 48, 51, 53. The addendum to the PSR correctly notes that the adjusted

offense level for Count I would be 44, and the total offense level would be 49 (capped at 43). Doc. 68. The suggested guideline range in this matter is 50 years, or 600 months, the statutory maximum for both counts. PSR ¶ 89, 90.

Paragraph "G" of the plea agreement provides that the Government will recommend the Court impose a term of imprisonment within the applicable guideline range, "subject to requesting that the punishment on Count I and Count III be served consecutively to each other." Doc. 57. The Government is also free to request that the federal sentences imposed be served consecutively to his state court case, resolved in Hughes County Criminal Case No. 14-454.

## Federal Investigation

The Defendant was identified pursuant to an international and federal investigation of online internet hidden services operating on an anonymous computer network called Tor, involving users of so-called "hidden services" who are involved in illegal conduct, including the production, advertisement, and distribution of egregious child exploitation materials. PSR ¶ 14-15. Offenders such as the Defendant utilized these anonymizing services in order to protect their identity and avoid detection by law enforcement. The technology deployed by the Defendant and others with whom he associated makes it extremely difficult for law enforcement to identify and apprehend offenders. Eventually, federal agents learned a user with the online screen name *azmodene* was Defendant, and his interests were "Boys. Especially 5-12yo I love boy orgasms!". PSR ¶ 15. Defendant used a photo of the victim identified in Count I, J.D.R., as his avatar photo (a picture associated with his user account) and

photos were observed of the child's face and penis. PSR ¶ 15. Defendant was posting child pornography of the boy, which was distributed. PSR ¶ 16.

Federal agents could tell that the adult that was sexually abusing the boy in Count I had the same hair style as Defendant. On July 28, 2014, United States Magistrate Judge John E. Simko issued 3 search warrants regarding Defendant: (1) for his residence in Selby, SD, (2) for his law firm in Mobridge, SD, and (3) for his person or body, including hair and the top of his head. PSR ¶ 21. State authorities assisted in the service of the 3 federal search warrants and over 8,000 images and at least 20 videos of child pornography were found on Defendant's electronic media. PSR ¶ 24. Some of the materials are sadistic or masochistic depictions, including a video of a 1-2 year old toddler being anally raped; an image of an infant being anally raped by an adult penis; a video of what appears to be a male hand anally raping an infant boy; a 14-minute video of a 10-12 year old boy being bound and raped, where the child is seen struggling – the boy is also gagged. PSR ¶ 24. Defendant was contacted, interviewed, confessed and was arrested.

### South Dakota State Charges

Based upon the fact that state offenses of first degree rape had occurred in Hughes County, as well as the reality that there was a third separate victim that child pornography was not produced with, state authorities instituted charges. PSR ¶ 57. On September 25, 2015, state Circuit Court Judge John Brown sentenced Defendant to 25 years on Count I (First Degree Rape), and 25

consecutive years on Count II (First Degree Rape), for a total of 50 years incarceration. PSR ¶ 57.

This Court may ask, what does a 50 year state sentence actually mean? Under state law, first degree rape is a Class C felony. SDCL § 22-22-1. Before being eligible for state parole, a defendant convicted of a Class C felony must serve 50 percent of his term of imprisonment for such a first offense; he must serve 65 percent of his term of imprisonment for his second offense. SDCL § 24-15A-32. As applied to Defendant, it appears, he will be eligible for parole after serving 12.5 (or 25 x .50) years on the first count and 16.25 (or 25 x .65) on the second count, or a total of 28.75 years.

## PSR Objections

To address some of the PSR objections, the Government anticipates the Court will receive evidence at the sentencing hearing in this matter, including hearing from the victim's family about their relationship with Defendant, and how they continue to feel violated by Defendant's conduct.

Objection # 8

As the PSR author notes, the U.S.S.G. § 2G2.2(b)(6) enhancement has been applied in other local cases. "The guidelines provide increased punishment for use of the internet in the child pornography trade because the increased efficiency and anonymity make both senders and receivers of this material more dangerous." *United States v. Stulock*, 308 F.3d 922, 925 (8th Cir. 2002). The use of a computer enhancement should apply under the unique circumstances of this case. Defendant used the computer and the

internet in a very sophisticated manner to distribute child pornography to a wider, global market beyond South Dakota. He used Tor to protect his own identity and to distribute and access child pornography. He registered with a website that is an online bulletin board whose primary purpose is the advertisement and distribution of child pornography. The website required its users to continually upload child pornography in order to gain membership and keep membership – a method specifically designed to prevent law enforcement interdiction. From at least December 2013 to July 2014, Defendant was a member of the website and distributed materials containing child pornography. When we look at the sophisticated way in which a computer was used to toss child pornography out to the world for wider consumption, the 2-level enhancement should apply.

Objection # 9

When some of this conduct was occurring, Defendant was:

a. Walworth County State's Attorney – a public official;

b. A licensed attorney;

c. He had a professional attorney-client relationship with this family. He had represented the family on family-law related matters. He befriended the family, visited their home and developed a relationship with the minors; and

d. He also had position of private trust with the family – whether you call it a mentor, tutor, or babysitter, he was a grown-up who provided an oversight role with the children, which made it easier for him to abuse the children on numerous occasions, which lead to the manufacturing of child pornography.

5

The Government does not understand how Defendant thinks this enhancement should not apply. At his own sentencing hearing in state court on September 25, 2015, the Defendant told Judge Brown:

> "And I'm sorry to the system. There was no greater honor or joy in my life than being an attorney, defending my clients, helping them and guarding them. And I betrayed two of them and their families."

The enhancement in PSR paragraph 46 should apply.

Objection # 10

Both "pattern of activity" adjustments should be applied. In the PSR, paragraph 42 addresses U.S.S.G. § 2G2.2(b)(5), which provides for a 5-level upward adjustment if the defendant engaged in a pattern of activity involving the sexual abuse or sexual exploitation of a minor. The PSR, in paragraph 52, addresses U.S.S.G. § 4B1.5(b)(1), which also provides for a 5-level upward adjustment if the defendant engaged in a "pattern of activity involving prohibited sexual conduct." While at first blush it would appear to be double counting to include both upward adjustments, the caselaw, commentary, and history of the two provisions make it very clear that it is not double counting to include both.

The Eleventh Circuit held that it was not double counting to apply § 2G2.2(b)(5) and § 4B1.5(b)(1). *United States v. Rothenberg*, 610 F.3d 621, 624 n.4 (11th Cir. 2010). In that case the defendant pled guilty to enticing a juvenile (a violation of 18 U.S.C. § 2422(b)) and possession of child pornography (a violation of 18 U.S.C. § 2252(a)(4)). The PSR applied both 5-level adjustments based upon uncharged conduct involving two separate

internet conversations that the defendant had with other adults in which the defendant advised the adults how to go about engaging in sexual abuse of children. The *Rothenberg* court explained that the application of "the two pattern of activity enhancements does not amount to 'double counting' because they were applied, respectively, to two separate and distinct offenses involving different conduct and different harms." *Rothenberg*, 610 F.3d at 624 n.4. The court of appeals further explained that "either of the prior chats … would be sufficient, when joined with the offense of conviction, to warrant the finding of a 'pattern' supporting the enhancements." *Id.* at 624 n. 5.

Similarly, here, the two adjustments should apply because there are separate and distinct offenses involving different conduct and different harms. First, the § 2G2.2(b)(5) pattern of activity adjustment should apply because Defendant engaged in repeat instances of "sexual abuse" of the youngest boy, J.D.R. He performed felatio and masturbated the youngest boy, and also repeatedly videotaped and photographed the boy, and pushed those materials out onto the internet. The youngest boy also performed fellatio upon him. PSR ¶ 25, 27. Those paragraphs justify the pattern of activity adjustment. Second, the § 4B1.5(b)(1) adjustment should apply because Defendant engaged in repeat "prohibited sexual conduct" with the two older boys (J.L.R. and C.C.). PSR ¶ 25, 26, 54. Thus, Defendant is not subjected to the same adjustment twice for the same conduct. Instead, he is assessed a 5-level upward adjustment under § 2G2.2(b)(5) for producing child pornography with the youngest brother (the subject of Count I), and a second 5-level upward

7

adjustment for engaging in repeated sexual abuse of the two older brothers over the course of several years.

As another court observed, "these provisions concern conceptually separate notions related to sentencing." *United States v. Bastian*, 650 F. Supp. 2d 849 (N.D. Iowa 2009). In particular, "[t]he § 2G2.2(b)(5) enhancement is a specific offense characteristic for crimes involving child pornography. In contrast, § 4B1.5 was created to address recidivism concerns." In analyzing the differences between the two pattern adjustments, the *Bastian* court pointed to the background comment to § 4B1.5, which declares that "[t]his guideline applies to offenders whose instant offense of conviction is a sex offense committed against a minor and who present a continuing danger to the public." *Id.* (quoting U.S.S.G. § 4B1.5, Background cmt.) Thus, this Court should apply the § 2G2.2(b)(5) adjustment because Defendant engaged in two or more instances of creating child pornography with the youngest victim, J.D.R. Then, this Court should apply § 4B1.5(b)(1) to address the clear recidivism concerns that arise due to Defendant's prolonged sexual abuse of other children, the older boys, J.L.R. and C.C.

Additionally, the Fourth Circuit also held that it was not double counting because the defendant's "conduct fell squarely within its definition." *United States v. Schellenberger*, 246 F. App'x 830, 832 (4th Cir. 2007). Moreover, the court of appeals there held that "double counting was permitted." *Id.* Indeed, the *Schellenberger* court expressly observed that "the [G]uidelines intend the cumulative application of these enhancements." *Id.* Therefore, even if the

8

application of both 5-level adjustments were for the same conduct and were considered "double counting," the Fifth Circuit has held that double counting is permissible: "This circuit has recognized that the guidelines do not contain a general prohibition against double-counting. *United States v. Box*, 50 F.3d 345, 359 (5th Cir. 1995). Rather, double-counting is prohibited only if it is specifically forbidden by the particular guideline at issue. *Id.* The prohibition must be in express language." *United States v. Calbat*, 266 F.3d 358, 364 (5th Cir. 2001). There is no express prohibition in the Guidelines forbidding the application of both § 2G2.2(b)(5) and § 4B1.5(b)(1).

Moreover, the cases interpreting this "double counting" argument have all ruled against such an argument in part because the Sentencing Commission expressly observed the similarity between the two adjustments when it added § 4B1.5(b)(1) in 2001, but nevertheless concluded that the second 5-level adjustment was necessary. Indeed, the addition became effective November 1, 2001, under "Amendment 615." The Commission explained the reason for the amendment, and noted that § 4B1.5(b) "is similar to the existing five-level pattern of activity enhancement in [§ 2G2.2] . . . and effectuates the Commission's and Congress's intent to punish severely offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." *See* United States Sentencing Commission, Guidelines Manual, Supp. To Appendix C-Vol. II, Amendment 615, at 123 (Nov. 1, 2003), available at http://www.ussc.gov/Guidelines/2010_guidelines/Manual_PDF/ Appendix_C_Vol_II.pdf.

9

In other words, the Sentencing Commission was well aware of the similarity of the two pattern adjustments, but concluded that the cumulative impact of applying both adjustments was not improper, especially because of the universal intent of Congress and the Commission to ensure that people like Defendant who have engaged in the sexual abuse of minors on two or more occasions should receive the most severe punishment possible under the Guidelines. As the PSR makes clear, Defendant has engaged in more than two occasions of sexual abuse of a minor. Indeed, he repeatedly raped or molested J.L.R. and C.C. before moving on to his most recent victim, their younger brother J.D.R. Congress and the Sentencing Commission very much intended someone like Defendant to receive both pattern adjustments.

In sum, the caselaw, commentary, and history of the pattern adjustments make it abundantly clear that both adjustments were intended to apply in a scenario such as the one before the Court now. The United States urges this Court to find that the PSR is correctly authored and both pattern adjustments should apply.

## **Argument**

In this case, Defendant did far more than commit two counts of rape in the first degree, which were the result of his two convictions in state court:

    a. He has been accessing and/or keeping child pornography for about 17 years. He gathered one collection, which he got rid of at some point, but then returned to accessing and downloading child pornography and amassed a huge collection – over 8,000 images and 20 videos; PSR ¶ 24, 25. He is just now being challenged for years and years of illegally collecting child pornography.

b. He began producing child pornography: images of the older boy, J.L.R.; images of the younger boy, J.D.R.; videos of Defendant sexually abusing the younger boy. PSR ¶ 24.

c. He used an anonymity network (Tor) to distribute child pornography: these videos and images of these victims have been cast to the wind and truly can never be pulled back. PSR ¶ 15, 16, 17, 18.

d. As will be clear from the Court's review of some of the select images of child pornography in this case, Defendant took care to protect his own identity, at times, but took no care to protect the youngest boy's identity/face. He undertook efforts to keep his own identity anonymous, but did nothing to protect a young boy he professed to care deeply for from public humiliation – such abuse does not end with this conviction.

e. He identifies himself as a pedophile, and has been dealing with his attraction to boys for a number of years. He has produced child pornography with two of the children that are members of the family identified in the PSR. PSR ¶ 25.

f. He also sexually abused a third boy, C.C., that is a member of the family identified in the PSR, but did not produce child pornography with C.C. PSR ¶ 25.

g. He was a law student from 2002 to 2005, and a lawyer thereafter: working with Dakota Plains Legal Services from 2006 to 2008; associated with Esquire Group in Minneapolis from 2008 to 2009; Walworth County State's Attorney from 2009 to 2012; and in private practice in Mobridge from 2012 to July 2014. He took an oath as an attorney that required him to uphold the law, abide by the Rules of Professional Conduct; he had a duty to maintain the confidence and preserve inviolate the secrets of his clients; he had a duty to abstain from all offensive personality; he had a duty to abstain from law violations. He has surrendered his law license, but the fact that he violated this family's trust reflects poorly upon the entire legal profession.

h. During the creation of some of the child pornography, he held a position of public trust – he was a prosecutor and the Walworth County State's Attorney. PSR ¶ 25(b)(iii). Defendant abused a position of public trust in that he was a prosecutor during the time frame he was collecting and manufacturing child pornography.

11

  i. Defendant sexually abused the boys while he was serving as a caretaker **or** babysitter **or** mentor **or** tutor for the boys – he violated a private trust. PSR ¶ 9.

  j. Defendant possessed some child pornography materials that portrayed sadistic or masochistic conduct. PSR ¶ 24.

No child pornography charges were pursued at the state level. The pending federal charges involve a substantial federal interest in that Defendant engaged in creating sexually explicit images involving children, as well as the distribution, receipt and collection of such images. The Supreme Court has found that the federal government has a surpassing and enduring interest in protecting children through vigorous enforcement of the federal criminal child pornography statutes. *See Osborne v. Ohio*, 495 U.S. 103 (1990); *New York v. Ferber*, 458 U.S. 747 (1982). It is well settled that images of child pornography harm children because they, among other things: represent the permanent memorialization of the sexual abuse of a child; can be used to lower a potential abuse victim's natural inhibitions to engaging in sexual activity with an adult; and fuel the acute abuse of children by creating a market for images depicting such abuse. *Osborne*, 495 U.S. at 107; *Ferber*, 48 U.S. at 759.

While one aspect of Defendant's federal criminal conduct (creating child pornography) was made possible by the underlying rapes to which he pled guilty in state court, the state rape statutes are primarily intended to vindicate the state's interest in punishing and deterring rape crimes. On the other hand, the federal child statutes prohibiting the creation and distribution of child pornography, is primarily intended to vindicate the federal interest in

preventing the harms resulting from the creation of child pornography. These harms include, in addition to those mentioned by the Supreme Court and cited above, whetting the sexual appetite of pedophiles and child sexual abusers, encouraging a societal perception of children as sexual objects, and creating an unwholesome environment that undermines the proper development of children. See Congressional Findings, Pub. L. 104-208, Div. A., Tit. I, § 101(a), Sept. 30, 1996, 110 Stat. 3009-26. Accordingly, Defendant's production and distribution of child pornography justifies additional punishment that is separate and distinct from that meted out by the state to vindicate its primary interest in preventing and punishing child rape. Once an image is created and distributed via the internet, it is impossible to eradicate all copies of it or to control access to it. The harm to victims is lifelong.

## **Defendant Was Active in a Community of Like-Minded Child Pornographers**

The seriousness of the Defendant's conduct, and substantial federal interest in his prosecution, is further demonstrated by his choice to join and actively participate in an online community dedicated to the advertisement and distribution of child pornography, within which he distributed images of the children he abused. In December 2012, the United States Sentencing Commission published a comprehensive report examining federal sentencing policy in child pornography cases. See Federal Child Pornography Offenses, Full Report to Congress. United States Sentencing Commission (2012), available online at:

13

http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf. In its report, the Sentencing Commission details the significant risk offenders involved in on-line bulletin boards, such as the website Defendant participated in, pose to the community, finding that offender's participation in Internet "communities" in which members promote and share child pornography validates the sexual exploitation of children and may lead to the production of new child pornography images (and the consequent sexual abuse of children) by other community members (as it did here). *Id.* at 312-313. Defendant himself participated actively in such a community and actively shared images of his abuse of children to group members. Sharing those produced images – and establishing himself within the community as a "producer," increased his status and standing within the group, giving him more access to additional child pornography. The Commission's recommendations regarding amendments to 2G2.2 reflected the fact that the guidelines fail to account for participation in such communities, referenced the fact that the use-of-computer enhancements fail to distinguish these sorts of more dangerous users from others, and proposed that 2G2.2 be amended to include as a factor to be considered in imposing sentences: "the degree of an offender's engagement with other offenders – in particular, in an Internet 'community' devoted to child pornography and child sexual exploitation." *Id.* at 320-324. While there is presently no sentencing guideline enhancement for being an

active participant in an online child pornography community, that factor bears consideration among the 18 U.S.C. § 3553 factors that the Court must consider, and militates strongly in favor of a sentence at the high end of the calculated guidelines.

### **Defendant's Role As Prosecutor**

Like it or not, law enforcement officers (prosecutors and police) are held to a higher standard than the average citizen. It is a breach of the public's trust when those who swear an oath to enforce the law actually break the law. Public corruption, in any form, undermines the rule of law necessary to the orderly functioning of a civil society, the principled function of government, and the public's faith in the reliability of these institutions. As such, crimes involving corrupt law enforcement officers, particularly those committed by prosecutors who voluntarily assume the responsibility of enforcing the law, demand severe punishment. Defendant's crimes – his intentional sexual abuse and manufacturing of child pornography – are repugnant to the criminal justice system. When, as in this case, a public official is found to have violated some of the weakest members of our society – children – the criminal justice system must respond with a severe sanction.

The Court should follow the guidelines in this case, and impose a sentence of 50 years imprisonment. Whether this Court decides the federal term of imprisonment should be 50 years consecutive to the state time, or concurrent to the state time, such a 50 year sentence would be well earned in this case. Just because Defendant might think 50 years might sound severe,

does not mean it is unfairly or unreasonably harsh. Long, or harsh sentences, including consecutive sentences to state rape or molestation charges, have been upheld elsewhere and found to be reasonable:

- *United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (defendant's sentence of consecutive terms of imprisonment for statutory term on all counts of conviction for the production, receipt, and possession of child pornography, amounting to 750 years imprisonment, was reasonable; guidelines were calculated at offense level 52, in case where grandfather took pornographic photographs of his granddaughters);

- *United States v. Ward*, 686 F.3d 879 (8th Cir. 2012) (in sentencing defendant who secretly filmed front of twelve-year-old girl's nude body before and after she took shower and was convicted of sexual exploitation of a minor and possession of child pornography, district court did not abuse its discretion by imposing concurrent sentences of 360 and 120 months in prison, the statutory maximum on each count, consecutive to unserved portion of defendant's state court sentence of life without parole for raping victim's eleven-year-old sister);

- *United States v. Bastian*, 650 F.Supp.2d 849 (N.D.Iowa 2009), *affirmed* 603 f.3d 460 (8th Cir. 2010) (sentences of 360 months for sexual exploitation of child and 240 months for receipt of child pornography, to be served consecutively, were reasonable and reflected defendant's strong interest in sexually abusing minors, protected public from further crimes, and reflected seriousness of defendant's offenses; defendant had substantial history of sexually abusing children, beginning when he was 16 or 17 years old and continuing into his adulthood, defendant produced and distributed child pornography of his own and downloaded numerous child pornography images via internet, including images depicting minors that were bound or otherwise treated violently and video files exceeding five minutes in length).

- *United States v. Nania*, 724 F.3d 824 (7th Cir. 2013) (district court did not abuse its discretion or impose sentence that was substantively unreasonable in directing that defendant's 330-month, below-Guidelines sentence for producing child pornography, by recording his sexual crimes against young girls that he was convicted of abusing in state court, run fully consecutively to sentences imposed for state offenses, thereby ensuring that defendant, who would be eligible for release on state sentences when he was 103, spent life in prison; district court reasonably determined that consecutive sentencing was required to provide some additional punishment for defendant's federal offense,

16

which exposed his victims to continuing harm as images of his abuse circulated, as well as to provide some marginal deterrence);

- *United States v. Broxmeyer*, 699 F.3d 265 (2d Cir. 2012) (thirty-year prison term for possession and attempted production of child pornography, which was more than the 15-year minimum for attempted production of child pornography, but less than the recommended 40-year Guidelines sentence for both crimes of conviction, was not abuse of discretion in light of at least four aggravating factors supported by the record; defendant's crimes involved the repeated abuse of a position of trust conferred on him by "parents and the community" to train and mentor adolescent girls, crimes of conviction were part of a larger pattern of sexual abuse, and defendant showed a disturbing lack of remorse for, or even appreciation of, the seriousness of the totality of his conduct);

- *United States v. Shouse*, 755 F.3d 1104 (9th Cir. 2014) (sentence of 50 years' imprisonment, to be followed by a lifetime of supervised release, was not unreasonable in prosecution for production of child pornography; district court discussed the specific nature of the offense, which involved an extremely young and predatory and dangerous behavior, considered the statutory sentencing factors, including the defendant's criminal history and the need for just punishment, and weighed all of the evidence provided);

Lastly, the 2006-2014 U.S.S.G. § 2G2.1 sentencing statistics for the 8th Circuit are attached to this memo, which indicate the average sentence in that time frame was 349 months (29 years). In other words, the average case might warrant 29 years, but there are numerous factors (a very large collection of child pornography, multiple victims, public and private trust, wide distribution, advanced technology, online community involvement, sadistic and masochistic materials, 17 years of child pornography collection,) that make this far from an average production case.

In conclusion, the Government recommends that a total sentence of 50 years, or within the applicable guideline range, is appropriate in this case. A sentence of 50 years imprisonment on these federal charges will help ensure

Defendant will never be permitted to physically harm little boys, nor produce child pornography, nor take part in a sophisticated online child pornography web-sharing criminal enterprise like he so aptly did for far too long.

Dated this 10th day of March, 2016.

RANDOLPH J. SEILER
United States Attorney

*/s/ Tim Maher*

_____

Tim Maher
Supervisory Assistant U.S. Attorney
P.O. Box 7240
Pierre, SD  57501-7240
(605) 224-5402

CERTIFICATE OF SERVICE

The undersigned attorney for the United States of America hereby certifies that on the 10th day of March, 2016, the foregoing was electronically transmitted by the clerk's office or mailed first-class, postage prepaid, hand-delivered, or faxed by the undersigned this date to the parties listed below:

Ed Albright – via e-filing
Assistant Federal Public Defender
101 South Pierre Street, Third Floor
Pierre, SD  57501

RANDOLPH J. SEILER
United States Attorney

*/s/ Tim Maher*

_____

Tim Maher
Supervisory Assistant U.S. Attorney